### E. B. CLARK v. THE STATE.

No. 14369. Delivered November 13, 1931.
State's Rehearing Denied January 6, 1932.
Application for Leave to File Second Motion for Rehearing
Denied February 10, 1932.

The opinion states the case..

*J. S. Bracewell,* of Houston, for appellant.

*O'Brien Stevens,* Criminal District Attorney, and *E. T. Branch,* both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is accepting a bribe; the punishment, confinement in the penitentiary for two years.

Appellant, who was a constable in Harris county, had appointed two deputy constables named Peterson and Gregg. Dick Woods, a state's witness, lived in appellant's precinct. Woods testified, in substance, as follows: He was running a house where people were permitted to congregate for the purpose of gambling. Gregg and Peterson often came to his house when a game was in progress, but did not enter. They would drive to the house in an automobile and blow the horn, and he would take $10 out to the car and give same to said parties. He finally quit

giving the parties money and was arrested by appellant, and required to pay a fine for gambling. A third party had told him if he would pay Gregg and Peterson they would not interfere with his game. He had also heard Gregg tell said third party that they might go ahead with the game. Prior to the time he began paying money to Gregg and Peterson they had come to his place and beaten up several of the participants in the game. Before appellant was arrested a Mr. Ward and Peterson came to see him (witness) and asked him to sign a paper, making the statement to him that if he would sign it they would all get out of trouble. He declined to sign the paper until Gregg was present. After Gregg appeared and told him it was all right, he signed the paper. Later Woods was told by Gregg that he signed a statement involving appellant. He then stated to Gregg that he had had no business dealings with appellant.

Peterson, who was an accomplice witness, testified that appellant and Gregg advised him that they would give him ten per cent of the amount he collected from Woods; that he went to Woods' house every Saturday night and made the collection; that he turned the money over to Gregg, and on some occasions had seen Gregg give the money to appellant; that Gregg and appellant did not tell him what Dick Woods was doing; that appellant and Gregg told him to stay away from Woods' house; that he had never given Clark any money himself. The justice of the peace testified that after the indictment had been returned against appellant and appellant had been released from custody, he came to him and asked him to see the district attorney in regard to a suspended sentence. We quote from his testimony as follows:

"He (appellant) said he did not see this darky Woods on this particular date (the date charged in the indictment), but that he had received money, but he didn't get the money and that he hadn't made this arrangement with Woods, but those men working for him, I believe Peterson and Gregg, had gotten the money and it didn't amount to anything much and it just went away like it come, just for a few little things here and there, and he didn't have any money to pay for any defense or anything. He said that he didn't individually get the money from the negro. He said that Peterson and Gregg got it. He said that he, defendant, got some of it, that it was divided."

The justice of the peace further testified that appellant never told him while he was constable that Woods was running a gambling house, and that he was taking money from him. He said: "He never told me until after he was indicted."

It appears that W. H. Warren, who was a special officer in the Bureau of Prohibition and who had authority to make arrests, went to appellant, several weeks prior to the return of the indictment, for the purpose of determining why certain conditions with reference to viola-

tions of the liquor laws prevailed in his precinct. He stated to appellant that as an officer of the government he would appreciate him making a statement to clear the matter up. He testified that he advised appellant that it would be better to make a statement and tell the truth. He said that appellant asked him what he supposed they would do with him if he came clean and told the whole truth, and that he told appellant he had no authority in the matter, but would try to get an expression from the United States District Attorney. After having this conversation with appellant, the officer conferred with the district attorney. Thereafter he went back to see appellant and told him the district attorney said he would be considerate of him on account of his being only twenty-four years of age. The witness testified further that he did not remember whether anything was said to appellant about a suspended sentence; that he gave appellant to understand that he had some pretty good information against him; that there was some discussion about a lawyer, and that after appellant had made the confession he advised him not to have a lawyer. He further testified that he at no time arrested appellant or told him that he was going to arrest him. After the officer had seen the district attorney and advised appellant that the district attorney said that he would show consideration, appellant made a statement which was reduced to writing and signed by him. We quote the inculpatory portion of this statement as follows:

"As I remember we collected five dollars per week from Dick Wood, a negro, who operated a gambling place and sold some whisky, I think that we started with five dollars per week and went up to ten dollars per week. He also told me about Dick Wood leaving money with Fondon for him. After W. O. Peterson quit collecting for me about the first of September, 1930, C. H. Davidson did some collecting for me, paying me about fifty dollars during the month of September, 1930. Mr. Davidson told me he collected some from Dick Wood, ten dollars per week."

Appellant offered several witnesses who testified that his general reputation for being peaceable and law-abiding was good. The state offered no testimony to the contrary. Appellant did not testify in his own behalf.

We think the indictment is sufficient under the decision in Pierce v. State, 117 Texas Crim. Rep., 58, 38 S. W. (2d) 589. We pretermit further discussion of appellant's motion to quash.

When the state offered in evidence the written statement of appellant, as an admission against his interest, appellant's counsel asserted that appellant was under arrest at the time the statement was made, and that the statement was not made under the formalities required by article 727, C. C. P. Request was made that the court withdraw the jury and hear evidence upon the point. The court declined to have the jury withdrawn, and permitted the jury to hear evidence upon the question. The only evidence heard came from the officer who took the confession. Appellant

offered no testimony on the point. The court should have retired the jury and heard testimony, as requested by appellant. Bingham v. State, 97 Texas Crim. Rep., 594, 262 S. W., 747. In view of the fact that we are unable to determine from the record whether appellant could have offered testimony showing or tending to show that he was under arrest, we must hold that reversible error is not presented.

Appellant objected to the reception in evidence of his written statement on the ground that the testimony of the officer conclusively showed that the statement was not voluntarily made. The opinion is expressed that the testimony went no further than to raise an issue as to the voluntary character of the statement. Hence it was properly received in evidence.

Appellant excepted to the charge of the court on the ground that the issue as to whether his written statement was voluntary should have been submitted to the jury. We think the exception was well taken. Appellant declined to make a statement until the officer conferred with the United States district attorney relative to the consequences appellant might expect if he made a statement. After the officer told him that the district attorney said he would be considerate on account of appellant's age, and after appellant had been advised by the officer that it would be better for him if he made the statement appellant confessed. In connection with our discussion of this question, reference is made to the statement of the testimony of the officer set out in the first part of this opinion. Article 726, C. C. P., reads as follows:

"The confession of a defendant may be used in evidence against him if it appear that the same was freely made without compulsion or persuasion, under the rules hereafter prescribed."

The admission against interest not having been made while in custody or under arrest, the common law rule would govern. Womack v. State, 16 Texas App., 178. The rule applicable is discussed in Womack v. State, supra. In that case the accused had been advised by the owner of the stolen property that the district attorney had told him that if accused would testify against his co-defendant, accused would not be prosecuted. The injured party also promised the accused he would not sign a complaint against him if he would testify against the co-defendant. Under these promises the accused admitted to the injured party that he was guilty. At the time of the admission the accused was neither in custody nor under arrest. In holding the admission against interest to be inadmissible, the court said:

"Our statute provides that 'the confession of a defendant may be used in evidence against him if it appear that the same was freely made, without compulsion or persuasion, under the rules hereafter prescribed.' (Code Crim. Proc., art. 749). None of the rules prescribed by statute are applicable to the question raised by the bill of exceptions in this record,

because the appellant at the time of making the confession, was neither in confinement or under arrest. If it be admitted that our Code makes provision only for such confessions as are made when the defendant is in jail or other place of confinement, or whilst in custody of an officer (Code Crim. Proc., art. 750), then, in the absence of a statutory rule, we would be relegated to the common law for a rule which would govern. (Code Crim.. Proc., art.. 725).

"At common law, the rule was that 'the confession must be voluntary; not obtained by improper influence, nor drawn from the prisoner by means of a threat or promise; for, however slight the threat or promise may have been, a confession so obtained cannot be received in evidence, on account of the uncertainty and doubt whether it was not made rather from a motive of fear or interest than from a sense of guilt.' (Phil. Ev., 86; Warren v. The State, 29 Texas, 369). 'The material inquiry, therefore,' says Mr. Greenleaf, 'is whether the confession has been obtained by the influence of hope or fear, applied by a third person to the mind of the prisoner. * * * The rule of law, applicable in all cases, only demands that the confession shall have been voluntarily made, without the appliances of hope or fear, by any other person.' (1 Greenl. Ev., 13 ed., sec. 219; Whar. Crim. Ev., 8 ed., secs. 650, 651. See, also, Roscoe's Crim. Ev., 17 Ed., p. 40, et seq., and note.)"

The court said further:

"But, when not under arrest or in custody, or in any of the conditions pointed out in article 750, to make the confession of a party admissible, it must have been voluntary, that is, one not induced by any promise creating hope of benefit or immunity, or any threats creating fear of punishment. (Warren v. The State, 29 Texas, 369)."

See also Hanus v. State, Opinion on Motion for Rehearing, 104 Texas Crim. Rep., 543, 286 S. W., 218; Clayton v. State, 31 Texas Crim. Rep., 489, 21 S. W., 255. See, also, cases under note 5, article 727, Vernon's Annotated Code of Criminal Procedure of Texas.

The state contends that the officer taking the confession was not a person in authority. In Wharton's Crim. Ev., sec. 650a, in discussing the meaning of persons in authority, it is said: "The actual relations between the parties, and perhaps the relation as it actually appeared to the accused, is the controlling factor." Also an element to be taken into consideration is the condition of the accused,—his age, experience, intelligence, mental and physical condition. Again, it is said in Wharton's Cr. Ev., secs. 650a, 652b: "The test is whether the accused was likely to view the promise as authoritative. And this test is to be determined by the standard of the person confessing." Officers, the injured party, the employer of the accused have been held to be within the meaning of "persons in authority". Hanus v. State, supra. The

opinion is expressed the officer taking the confession was a "person in authority".

The state contends also that if there was error in refusing to submit the issue as to whether appellant's written statement was voluntarily made, the error was harmless because of the testimony of the justice of the peace to the effect that appellant had told him that his deputies had given him some of the money they had received from Woods. In this same statement appellant declared, according to the justice of the peace, that he had not made any arrangement with Woods to take the money but that his deputies had made such arrangement. Appellant did not say that he induced the deputies to collect money from Woods. He did, in effect, say this in his written statement. In short, the written statement was an unequivocal statement of guilt, while the statement to the justice of the peace was not. We are not able to reach the conclusion, that, under the circumstances, the error was rendered harmless by the testimony of the justice of the peace.

We think the proof supports the allegations contained in the indictment. According to the state's testimony, appellant sent his deputies to collect from Woods, while he (appellant) in pursuance of an understanding and agreement with the parties, failed to arrest Woods, notwithstanding it was his duty to arrest him. When the money was collected, appellant received his share.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—We have carefully examined the state's motion for rehearing, but are unable to reach a conclusion other than that expressed in the original opinion.

The motion is overruled.

*Overruled.*

### STATE'S APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The attorney for the state has filed request for leave to file a second motion for rehearing, insisting that we erred in reversing the judgment for the refusal of the trial court to submit to the jury the question of the admissibility of a statement in the nature of a confession, made by appellant and admitted in evidence over objection. As we understand the ground of the request now before us, it is that the

said statement referred to was admissible, aside from the question of warning, etc., because of the fact that by virtue thereof inculpatory evidence was discovered and disclosed which led to the conviction, and contributed thereto. We have examined the record with a view of ascertaining the correctness of this proposition, but confess ourselves unable to discover any testimony rightly belonging in the class referred to. Mr. Warren, the officer who took the statement of appellant referred to, testified that before he got said statement, he already had the statements of the various deputies and parties connected with the crime, who testified for the state, and gave evidence material to the conviction. No particular evidence is pointed out in the request for leave, above referred to, and we have been unable to find it.

The request will be denied.

*Denied.*