

# NUMBER 13-08-00632-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**FRANCISCO RIVAS ZAPATA**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                           **Appellee.**

## On appeal from the 197th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela**
**Memorandum Opinion by Justice Yañez**

Appellant, Francisco Rivas Zapata, pleaded guilty to murder, and the trial court assessed punishment at forty years' confinement.[1]  By his sole issue, appellant contends that his plea was involuntary.  We affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003).

## I. BACKGROUND

On July 14, 2008, employees of an apartment complex in Cameron County, Texas, found the body of Cointa Menchaca Wade, who had been stabbed with a knife approximately twenty-seven times. After Wade's death, appellant, who was a suspect in the murder, traveled to several states by bus.[2] Appellant was eventually apprehended by police in Georgia, where he confessed to stabbing Wade. Appellant was transported back to Texas and charged with murder.

On October 13, 2008, after discussing appellant's guilty plea with the trial court, defense counsel asked, "And at that point in time [the next morning] is when we are going to enter the plea; is that correct?" The trial court responded that the plea could be entered "right now." Defense counsel agreed stating, "Why don't we do it [enter the plea]," and the trial court replied, "Yes. Why don't we do that right now? We are going to enter the plea right now and tomorrow morning we will do the jury selection."[3] The State read the indictment to appellant, and he pleaded guilty to two counts of murder. When the State offered "the plea packet for an open plea" to the trial court, defense counsel stated, "This is not an open plea with punishment. We are going to go to punishment. So, I don't believe we sign the papers, unless there is something that I don't know about." The trial

[2] The police found evidence implicating appellant in his apartment and in Wade's apartment. In Wade's apartment, Officer Manuel Lucio found a broken kitchen knife with a missing handle underneath the body. In appellant's apartment, police found a plastic bag containing a pair of gloves and the handle of the knife wrapped in one of the gloves; one of the gloves had blood on it. The police also recovered a white men's t-shirt that was damp and smeared with blood.

[3] It appears from the record that after appellant was to enter his guilty plea, a jury would be selected to assess his punishment. However, the following day, no jury was selected, and there is nothing in the record indicating why appellant elected for the trial court to assess punishment.

2

court agreed.

The next day, on October 14, 2008, the following colloquy occurred:

[Trial Court]: [Appellant], you and your attorney have signed a Written Waiver and Consent to Stipulation of Testimony, Waiver of Jury, and Plea of Guilty. Do you understand that by signing this what you are telling me is that you are pleading guilty and you are asking that I find you guilty? Do you understand?

[Appellant]: Yes.

[Trial Court]: Do you understand that the range of punishment for this offense is for a term of not less than five years nor more than 99 years, to which the court can add a fine not to exceed $10,000?

[Appellant]: Yes.

[Trial Court]: Sir, do you understand that there is no plea bargain between your attorneys and the State?

[Appellant]: Yes.

[Trial Court]: You understand that back in chambers we have discussed 30 years TDC?[4]

[Appellant]: Yes.

[Trial Court]: Okay. And you are in agreement with that?

[Appellant]: Yes.

[Trial Court]: Are you a U.S. citizen?

[Appellant]: Yes.

[Trial Court]: Did anybody force you or coerce you into entering this plea?

[Appellant]: No.

[Trial Court]: Are you pleading guilty because you are guilty and for no other

[4] There is no record of this discussion, and it is unknown who was present in the trial court's chambers or who suggested thirty years as punishment.

3

reason?

[Appellant]: Yes.

[Trial Court]: Have you ever been in a mental institution or suffered from mental illness?

[Appellant]: No.

After admitting the State's evidence, the trial court found appellant guilty. The State reserved its "[comments] until after defense['s]" arguments. Then defense counsel stated, "I don't know what they [the prosecutors] are asking for. We've entered the plea. . . . I just ask this court to consider the 30 years." The State argued that due to the nature of the crime, the trial court should assess punishment at ninety-nine years' imprisonment. The trial court responded, "My understanding is that the State was willing to work a plea bargain for 40 years; is that correct?" The State agreed. Defense counsel responded that due to appellant's age, "[a]ny plea is a life plea in this case." Defense counsel then asked the trial court to consider "the 30 years" because appellant had taken responsibility for his actions and was remorseful. After the parties debated whether defense counsel received evidence showing that appellant committed domestic violence, the trial court called a ten-minute recess.

When the proceeding commenced, the following conversation occurred:

[Trial Court]: [Defense Counsel], before I allowed you to take a break to speak with [appellant], I told you based on what the State had stated that I would go along with the State's agreement to 40 years. I asked you to discuss that with your client, the 40 years. If not, I would give [appellant] an opportunity to have a jury trial as to the sentencing aspect of it as originally agreed upon.[5]

---

[5] We note that the discussion allowing defense counsel to speak to appellant regarding forty years is not in the reporter's record.

4

[Defense Counsel]: Yes, Your Honor, and I did. He is concerned that he would get more and has decided to go along with the 40 years. I, however, have tried to talk him out of it. He said, no, he would rather go with a plea to the court. So, I'm begging you, Your Honor, to consider that if you can't consider the 30, split the difference and go 35.

[Trial Court]: [Appellant], you understand that I asked your attorney to talk to you. The State had offered you 40 years TDC before and I will agree to the 40 years. If you do not want to take the 40 years, you have a right to go and have a jury come forward and a jury assess your punishment. What is your wish?[6]

[Appellant]: I just have one question to make. What does TDC mean?

[Trial Court]: Prison of the State of Texas.

[Appellant]: I will take it.

[Trial Court]: So, you understand that you are agreeing to 40 years in the state penitentiary?

[Appellant]: Yes, I agree.

[Trial Court]: And you are in agreement with that?

[Appellant]: I do agree.

[Trial Court]: All right. Then the court will give you 40 years in the Texas prison.

This appeal ensued.

## II. VOLUNTARINESS OF GUILTY PLEA

By his sole issue, appellant contends that his plea was involuntary. Specifically, appellant argues that the State is bound by the terms of the plea agreement "even though [the offer] was made by the [trial court], and that the [trial court's] continual involvement in

_____

[6] There is nothing in the record showing when the State offered forty years to appellant.

5

the plea bargaining process violated his right to due process to have a [judgment] free from the taint of involvement in the bargaining."  Appellant asserts that he is therefore "entitled to a new trial on both punishment and guilt-innocence."

## A. Standard of Review and Applicable Law

As a general rule, all non-jurisdictional defects that occur prior to the entry of the plea are waived by a defendant who pleads guilty without the benefit of a plea bargain agreement.[7]  However, a defendant is not barred from challenging the voluntariness of his plea.[8]  We review the entire record in order to determine whether a plea was entered voluntarily based on the totality of the circumstances.[9]  If the trial court properly admonished the defendant before a guilty plea was entered, there is a prima facie showing the plea was both knowing and voluntary.[10]  The burden then shifts to the defendant to show that he entered his plea without understanding the consequences and, consequently,

---

[7] *Jack v. State*, 871 S.W.2d 741, 743 (Tex. Crim. App. 1994) (explaining the *Helms* rule); *see Young v. State*, 8 S.W.3d 656, 666 (Tex. Crim App. 2000) ("[A] valid plea of guilty or nolo contendere 'waives' or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error."); *see also Monreal v. State*, 99 S.W.3d 615, 619 (Tex. Crim. App. 2003) ("The *Helms* Rule was clarified in *Young* . . . where we held that with or without an agreed recommendation on punishment, a valid plea of guilty or nolo contendere waives or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of and not supported by the error.").

[8] *Ramirez v. State*, 89 S.W.3d 222, 228 (Tex. App.–Corpus Christi 2002, no pet.) (providing that "if appellant's plea was involuntary, as he claims, application of *Young* leads to the conclusion that the judgment of guilt could not have been rendered independent of the error" and allowing the appellant, who pleaded guilty without the benefit of a plea agreement with the State, to challenge the voluntariness of his plea).

[9] *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1981); *Houston v. State*, 201 S.W.3d 212, 217-18 (Tex. App.–Houston [14th Dist.] 2006, no pet.) ("When considering the voluntariness of a guilty plea, we must examine the entire record."); *see Garza v. State*, No. 13-07-00360-CR, 2008 Tex. App. LEXIS 5117, at *4 (Tex. App.–Corpus Christi July 3, 2008, no pet.) (mem. op., not designated for publication).

[10] *Houston*, 201 S.W.3d at 217 (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam)).

suffered harm.[11]  Once an accused attests that he understands the nature of his plea and that it was voluntary, he has a "heavy burden" to prove on appeal that his plea was involuntary.[12]

In *Wayne v. State*, the court of criminal appeals stated that the plea-bargain process "requires (1) that an offer be made or promised, (2) by an agent of the State in authority, (3) to promise a recommendation of sentence or some other concession such as reduced charge in the case, (4) subject to the approval of the trial judge."[13]  The court explained that

> [p]lea bargaining is the process which implies a preconviction bargain between the State and the accused whereby the accused agrees to plead guilty or nolo contendere in exchange for a reduction in the charge, a promise of sentencing leniency, a promise of a recommendation from the prosecutor to the trial judge as to punishment, or some other concession by the prosecutor that he will not seek to have the trial judge invoke his full, maximum implementation of the conviction and sentencing authority he has, i.e., it is the process where a defendant who is accused of a particular criminal offense, and his attorney, if he has one, and the prosecutor enter into an agreement which provides that the trial on that particular charge not occur or that it will be disposed of pursuant to the agreement between the parties, subject to the approval of the trial judge.  Put another way, plea bargaining is the process by which the defendant in a criminal case relinquishes his right to go to trial in exchange for a reduction in charge and/or sentence.[14]

## B. Discussion

---

[11] *Pena v. State*, 132 S.W.3d 663, 666 (Tex. App.–Corpus Christi 2004, no pet.) (citing *Martinez*, 981 S.W.2d at 197; *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *Dorsey v. State*, 55 S.W.3d 227, 235 (Tex. App.–Corpus Christi 2001, no pet.)).

[12] *Houston*, 201 S.W.3d at 217.

[13] 756 S.W.2d 724, 728 (Tex. Crim. App. 1988).

[14] *Id.* (citing *Perkins v. Court of Appeals*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (internal quotations omitted)).

Here, it is undisputed that the trial court admonished appellant in writing.[15] Appellant answered affirmatively when the trial court asked (1) if he understood that by signing the written waiver and consent to stipulation of testimony, waiver of jury, and plea of guilty, he was asking the trial court to find him guilty, and (2) if he was entering his plea because he was guilty and not due to force or coercion. Furthermore, appellant acknowledged by signing the written waiver and consent to stipulation testimony, waiver of jury, and plea of guilty that he was pleading guilty "voluntarily." Because the trial court properly admonished appellant before he pleaded guilty, there is a prima facie showing the plea was both knowing and voluntary and the burden shifts to appellant to show that his plea was involuntary.[16]

Appellant first argues that he agreed to plead "guilty" based on an agreement that the trial court would assess a punishment of thirty years' imprisonment. Appellant relies on the trial court's asking him if he understood that "back in chambers we . . . discussed 30 years" and whether appellant agreed with that. Appellant asserts that the trial court was asking him if he agreed with a punishment of thirty years' imprisonment. Appellant claims

---

[15] Appellant signed a written waiver and consent to stipulation of testimony, waiver of jury, and plea of guilty wherein he acknowledged, among other things, the following: (1) he was "voluntarily and freely" pleading guilty as charged in the indictment; (2) he understood that if he was not a citizen of the United States, that pleading "guilty" for the charged offense may result in deportation; (3) if he "persist[ed] in pleading Guilty and the evidence show[ed] that [he was] guilty, the Court [would] have no alternative but to find [him] guilty"; (4) he was not pleading guilty out of fear or by reason of persuasion; (5) he was pleading guilty because he was "guilty"; (6) he understood that if the trial court found him guilty, it would assess punishment as prescribed by law for the charged offense; (7) the punishment prescribed for the offense to which he pleaded guilty was "confinement in the Texas Department of Criminal Justice Institutional Division (Texas Department of Corrections) for a term of years not less than five years or more than ninety-nine years"; (8) that his plea was "cold"; and (9) he understood that the trial court was not bound to accept a plea bargain and if the trial court rejected a plea bargain, appellant was entitled to withdraw his plea of guilty. Before finding appellant guilty, the trial court orally admonished appellant that there was no plea agreement in his case, and that the range of punishment for the offense of murder was no less than five years or no more than ninety-nine years.

[16] *See Pena*, 132 S.W.3d at 666.

8

that this "offer" by the trial court induced him to plead guilty and argues that we should conclude that the trial court entered an "implied in fact" contract binding the parties.

Although the trial court's statement is ambiguous, nowhere in the record did the trial court ask appellant to plead guilty in exchange for a thirty-year sentence. It appears more likely, based on the entire record, that the trial court was asking appellant if he concurred with the trial court's description of what had occurred in chambers, and not if appellant "agreed" to plead guilty in exchange for a thirty-year sentence. Moreover, before asking the complained-of question, the trial court informed appellant that there was no plea bargain with the State, and that the range of punishment was between five years and ninety-nine years. When the State later argued that the trial court should impose the maximum punishment of ninety-nine years' imprisonment, defense counsel did not argue that there was a plea agreement for thirty years or that the trial court had approved the terms of a plea agreement; instead, defense counsel urged the trial court "to consider" thirty years. When the trial court informed appellant that it would impose a sentence of forty years' confinement as offered by the State in an earlier plea negotiation, defense counsel did not assert that there was an agreement of thirty years or object to the trial court's imposition of forty years, but asked the trial court to consider "split[ting] the difference" and giving appellant thirty-five years.

Finally, appellant had already decided to plead guilty before the exchange with the trial court occurred.[17] In a proceeding on the previous day, appellant indicated that he was

---

[17] *See Rouse v. State*, No. PD-1533-08, 2009 Tex. Crim. App. LEXIS 1737, at *24 (Tex. Crim. App. Dec. 9, 2009) (stating "we do not see how any 'plea-bargaining' by the trial court concerning appellant's punishment could have influenced appellant's decision to enter an 'open' plea of guilty the day before").

9

entering a plea of guilty.[18] The next day appellant signed the written waiver and consent to stipulation of testimony, waiver of jury, and plea of guilty. Before making the complained-of statement, the trial court asked appellant if he understood that by signing the paperwork, appellant was "telling [the trial court] that [he was] pleading guilty and . . . asking that [the trial court] find [him] guilty." Appellant answered "Yes." In the written waiver, appellant acknowledged that he was entering a "cold plea." A cold plea is equivalent to an open plea,[19] which is a plea of guilty without the benefit of an agreement with the state.[20] Therefore, based on this record, we cannot conclude that the trial court entered a plea agreement with appellant to assess a thirty-year sentence if appellant pleaded guilty.[21]

Next, appellant argues that the trial court violated his due process rights because of its continual involvement in the plea-bargaining process. Appellant entered an open plea of guilty. There was no plea agreement between appellant and the State. There is evidence in the record that the State had previously offered forty years in exchange for appellant's plea of guilty; however, there is no record of these plea negotiations or of any

---

[18] We note that appellant complains that his plea of guilty the day before sentencing was "worthless because the trial judge did not follow any statutory requirement for entry of a plea, nor give him any required admonishments." However, appellant states that the "second plea of guilty was correctly done, without a jury, in which proper admonishments were made"; therefore, appellant is not "press[ing] [the issue] further [on appeal]."

[19] *Ramirez*, 89 S.W.3d at 226 (providing that this Court's "understanding [is that] the term "cold plea" [is] equivalent to the more familiar term "open plea").

[20] *Bowie v. State*, 135 S.W.3d 55, 70 n.11 (Tex. Crim. App. 2004) (defining an "open plea"as "a guilty plea entered without any previous agreement with the government"); *Ramirez*, 89 S.W.3d at 226.

[21] By our disposition, we do not mean to condone a trial court's involvement in the plea negotiation process. A trial court must avoid participation in the plea negotiation process until an agreement has been reached between the prosecutor and the defendant in order to "avoid the appearance of any judicial coercion or prejudgment of the defendant." *Perkins*, 738 S.W.2d at 282.

involvement by the trial court. Assuming *arguendo*, that after the trial court accepted appellant's plea of guilty, it engaged in the plea-bargaining process when it stated, "The State had offered you 40 years TDC before and I will agree to the 40 years. If you do not want to take the 40 years, you have a right to go and have a jury come forward and a jury assess your punishment,"[22] there is no evidence that appellant relinquished his right to go to trial in exchange for this sentence. In fact, the trial court had already accepted appellant's guilty plea.

This case is analogous to *Rouse v. State*.[23] In that case, after the defendant pleaded guilty, the trial court "offered [the defendant] a ten-year prison sentence 'pretty much in the nature of a plea bargain agreement' and stated that, if [the defendant] did not accept this offer, then it would be necessary 'to go forward with the enhancement counts.'"[24] The defendant argued on appeal that his plea was involuntary because the trial court engaged in plea negotiations. The court of criminal appeals concluded "that any 'plea-bargaining' by the trial court concerning appellant's punishment could [not] have influenced appellant's decision to enter an 'open' plea of guilty the day before."[25] Here, the trial court's alleged "plea-bargaining" concerning the punishment occurred *after* appellant had already pleaded guilty; therefore, like the *Rouse* court, we cannot conclude that the trial court's actions influenced appellant's decision to plead guilty.[26]

Therefore, after reviewing the entire record and based on the totality of the

---

[22] *See Wayne*, 756 S.W.2d at 728 (explaining what a plea bargain entails).

[23] *Rouse*, 2009 Tex. Crim. App. LEXIS 1737, at *24.

[24] *Id.* at **4-6.

[25] *Id.* at *24.

[26] *See id.*

11

circumstances, we conclude that appellant's guilty plea was voluntary.[27]  We overrule

appellant's sole issue.

### III. CONCLUSION

We affirm.

_____
Linda R. Yañez,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed
the 21st day of January, 2010.

---

[27] *See Griffin*, 703 S.W.2d at 196; *Houston*, 201 S.W.3d at 217-18; *see also Garza*, 2008 Tex. App. LEXIS 5117, at *4.