**Hon. Bob PERKINS, Judge, 331st Judicial District Court of Travis County, Relator,**

v.

**COURT OF APPEALS FOR the THIRD SUPREME JUDICIAL DISTRICT OF TEXAS, AT AUSTIN, Respondent.**

**No. 69555.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 7, 1987.

Benny E. Ray, Austin, for real party in interest Thi Van Le.

Terrence Keel, Asst. Dist. Atty., Austin, for relator.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Given what occurred in this cause, the old adage that "Sometimes Justice Can Be Too Swift for the Great State of Texas" might be applicable to what happened in this cause. Another old saying, "Before a prosecutor disposes of his case, he should know as much about the case as is possible so that he will be informed about the case," might also be applicable to what happened in this cause.

This is an original mandamus proceeding brought by the Hon. Bob Perkins, Judge of the 331st Judicial District Court of Travis County, hereinafter Relator. Relator contests the issuance by the Court of Appeals for the Third Supreme Judicial District, hereinafter Respondent, of the writ of man-

damus that directs him to specifically enforce a plea bargain agreement that had been entered into between Thi Van Le, hereinafter Le, who was the defendant in that cause numbered 78,754 and styled *The State of Texas v. Thi Van Le*, then pending in Relator's court. The plea bargain agreement was between Le, his attorney, and the prosecutor.[1] In issuing the writ, the Respondent also ordered Relator to enter a formal judgment of conviction that would encompass its ruling. See *Thi Van Le v. Perkins, Judge*, 700 S.W.2d 768 (Tex. App. —3rd Dist.1985).

This Court granted Relator's motion for leave to file his application for the writ of mandamus in order to address the questions whether the Respondent had jurisdiction to issue the writ against Relator and whether, if it did have jurisdiction to issue the writ, given the facts of this cause, did it clearly abuse its discretion in issuing the writ. Finding that respondent did have jurisdiction to issue the writ and further finding that it did not clearly abuse its discretion, see *post*, we will deny relator's application for the writ of mandamus.

We find that to better understand our action in denying Relator's application for the writ of mandamus, it is first necessary for us to set out the history of this cause. Also see *Thi Van Le v. Perkins*, supra, in which pertinent excerpts from the transcription of the statement of facts that relate to what occurred in Relator's court on September 16, 1985, are set out.

## HISTORY OF THE CASE

The genesis of this case goes back to September 16, 1985, when Relator called Le's case in his courtroom. Le was accused of murdering Ba Bui. The attorneys for Le and the State announced ready, after which Relator arraigned and admonished Le. Relator initially inquired of the parties whether they had "a plea negotiation in this case," and was told by the prosecutor that they had, that she and Le

and defense counsel had met and had "negotiated [a] plea", which was "25 years in the Texas Department of Corrections." Le's attorney then advised Relator, "Your Honor, on top of that, we're going to ask for a PSI [presentence investigation report] and ask the Court to consider all the facts, but that [the 25 years] is the [prosecutor's] recommendation." Relator then told Le that it was his "intention to accept the State's recommendation at this time," and that "if the Court proceeds to sentencing, then [you] can be given 25 years in the penitentiary and would not be allowed to appeal or anything else." Le acknowledged this. Thereafter, Relator ascertained that Le was waiving his right to trial by jury and that he was pleading guilty to the charge of murder. Relator approved Le's waiver of trial by jury. Le then told Relator that it was his desire to plead guilty, "as it states here on this written plea form." Le was then questioned by his attorney, during which Le stated that "he didn't do any of the shooting or stabbing [of Ba Bui]; that he did not "touch [Ba Bui] but that under the law of [parties] in the State of Texas [he understood that the law made him] equally guilty [if he was] involved in a criminal act in which somebody is killed by others involved in that same criminal act." Le also testified that he did not know the deceased before the killing. Le further testified that he, Cahn "Johnny" Nguyen, and Hoang Dinh Pham, aka Tuan Hoang Doi, agreed to go to the apartment of Ba Bui to rob Ba Bui and any other person who might then be present. "Johnny" armed himself with a Uzi machine gun; Pham armed himself with a pistol and a knife; and Le armed himself with a knife. Le testified that until he was inside of the apartment he was unaware that "Johnny" and Pham intended to kill whoever was inside of the apartment, as he thought they had gone there just to rob Ba Bui and others who might then be present. The record reflects that after Le, "Johnny", and Pham entered the apartment, Ba Bui was stabbed and then shot, which

---

**1.** The Assistant District Attorney who represented the State in this cause was not the prosecutor in the trial court.

caused his death. Two other persons who were then inside of the apartment were wounded, but survived. Another person inside of the apartment managed to escape without injury. By an affidavit by another assistant district attorney,[2] it was not until after Le had pled guilty that either the police or the district attorney's office interviewed the surviving victims. Of course, if an interview with a victim of a criminal wrong is going to take place, that should occur long before the defendant pleads guilty in a court of law.

Le admitted to Relator that everything that was contained within the indictment was true and correct. The prosecutor soon thereafter had admitted into evidence without objection the plea of guilty forms that the parties had earlier completed and signed. Relator approved them. A letter from Le, in which he asked Relator for mercy, was also introduced into evidence without objection.

Relator then found Le guilty as a party to the offense of murder, "and not that you yourself actually committed the murder." The prosecutor, who, by the other assistant district attorney's affidavit, had not then interviewed the survivors, in response to a question by Relator, stated that she was in agreement with Le's version of the facts. Based upon what he had heard, Relator made a negative finding that Le had personally used or exhibited a deadly weapon.

When Relator asked the prosecutor if she had a recommendation as to punishment that should be assessed Le, she responded: "25 years in the Texas Department of Corrections." Relator then asked Le and his attorney whether they were in agreement with the 25 year recommendation by the prosecutor, and they told him they were. Relator then announced his understanding of what the parties had agreed upon: "(Referring to Le's attorney): You—basically, you're stating that you-all are accepting the 25 as being the maximum ceiling and that that's what you-all are agreeing to and you understand that I could go lower than that but you-all's agreement is that I would go no higher

2. This is also not the same assistant district attorney who represents the State in this cause.

than 25." Le's attorney informed relator "that is correct." Relator then informed Le of his understanding of the agreement, with Le acknowledging that the above was the agreement that he and his attorney had entered into with the prosecutor.

The record clearly reflects that Relator made it clear to everyone that "the maximum punishment that [he] would be giving [Le] ... would be 25 years pursuant to the State's plea negotiation." However, Relator also made it known to everyone that "it [was] possible that [he] would go lower than—that, [that he might] give [Le] something less than 25 years in view of [his, Le's,] testimony, in view of the letter that you've submitted to the Court and all of the evidence in this case. It's a possibility that [I] would do less than 25 [but I am] not [now] really sure how much that would be."

A presentence investigation report was thereafter prepared. Given the fact that when the parties were before Relator, see *ante,* and the only issue then extant was whether Relator would thereafter go under the agreed upon "cap" of 25 years, and that the possibility of probation was never mentioned, we find the following statement in the report to be a strange statement to say the least, except for the fact that when Relator agreed not to assess more than 25 years, and thus might assess 10 years or less, probation apparently was not ruled out in the case: "After careful consideration of all the facts in this case and a departmental staffing, it is respectfully recommended the defendant not be granted a term of probation."

The record reflects that the parties returned to court on September 30, 1985. The affidavit of the non-prosecuting assistant district attorney, see *ante,* reflects that on September 27, 1985, he and the prosecutor who was handling the case "decided to ask Judge Perkins to refuse to follow our earlier plea recommendation." By a statement by Relator that he made almost at the commencement of the proceedings on September 30th, it appears that between September 27th and September 30th, the prosecutors may have had an ex parte conversa-

tion with Relator, in which the following occurred: "Subsequent to [September 16th], [the prosecutor] has informed me [Relator] that she has talked to one of the victims in this case that survived this assault and that that victim gave to her information which was not contained in their file, that they had not known about at the time that they made their 25 year recommendation and in addition to that, that it was not contained in the police file either." This "new" information was that Le had actually and personally stabbed "someone", which was contrary to his earlier testimony. Relator told Le that because of this information *the prosecutor* did not believe that he had been truthful when he testified on September 16th and that "they are not recommending 25 years in the penitentiary for you at this time. So the State has withdrawn their plea bargain offer in this case." Relator also told Le that based upon the above he would "not accept the 25 years that I'd previously assessed in this case." When informed of the above, counsel for Le informed Relator that he was not willing to go forward without "a recommendation and fixed term of years." Relator then asked counsel if he wished to withdraw Le's earlier plea of guilty and counsel told Relator that he did, although counsel strongly protested what was then occurring, "Well, our position is, Judge, that we feel that a plea was negotiated in good faith, was accepted by this Court and the only thing left was whether or not the Court would consider a less punishment." Relator responded: "I understand." In his statements to Relator, trial counsel for Le did not accept the truthfulness of the above statement that had been made to the prosecutor. Counsel for Le soon thereafter made it known to Relator that "We wish to be sentenced to 25 years but in light of the Court—the Court will not sentence him to 25 years, and we're withdrawing the plea with the understanding that it is our desire to be sentenced to 25 years and therefor, we are left no alternative but to withdraw the plea." Relator then responded: "All right. I understand. Okay, you're basically—you just basically want to preserve error, if any error was made." Counsel re-

sponded: "That's correct." Relator then stated: "[T]he Court then will allow the defendant to withdraw his plea of guilty on this cause," and then reset the case for October 3rd. The record before us does not reflect where Relator ever incorporated Le into any of the above discussions. The docket sheet reflects that the case was then reset for October 22nd. Given what happened in the court of appeals and what occurred thereafter, the case is presently on hold, awaiting this Court's final decision.

On October 25, 1985, Le filed an application for writ of mandamus in the court of appeals. On November 27th that court issued the writ, "directing respondent, the Honorable Bob Perkins, to enter a judgment of conviction against relator, Thi Van Le, in Travis County cause number 78,754, in accordance with the binding plea bargain agreement entered into September 16, 1985."

Thereafter, this Court granted Relator's motion for leave to file his application for writ of mandamus against the court of appeals, and set the cause for submission and oral argument, which has occurred.

## RELATOR HAD NO AUTHORITY TO GRANT THE STATE'S "MOTION FOR NEW TRIAL ON THE BASIS OF NEWLY DISCOVERED EVIDENCE"

Under this Court's decision of *Zaragosa v. State*, 588 S.W.2d 322 (Tex.Cr.App. 1979), Relator had no lawful authority to *sua sponte* withdraw Le's plea of guilty. In *Zaragosa,* supra, this Court held that because a motion for new trial in a criminal case may be granted only on the timely motion of a defendant, a trial judge has no power to grant a new trial on his own motion, and, if he does grant a motion for new trial on his own motion, such is a void act. We find that Relator's act, after approving the plea bargain agreement that the parties had entered into, to the extent of the "cap" that had been set on punishment that would be assessed by Relator, in refusing to go forward with the plea bargain agreement and withdrawing Le's plea

of guilty, actually amounted to the granting on his own motion a new trial for Le. Such act was, for the reasons stated in *Zaragosa,* supra, a nullity. Le stands convicted of the offense of murder on his plea of guilty.

We observe that in *Morris v. State,* 658 S.W.2d 310 (Tex.App.—1st 1983), No P.D.R., the Houston First Court of Appeals was confronted with a similar situation as occurred in this cause. There, the defendant waived trial by jury, entered a plea of guilty to the misdemeanor offense of criminally negligent homicide, was found guilty, and the trial judge assessed his punishment at 20 days' confinement in the Harris County jail. A $500 fine, together with court costs, was also assessed. The case was then reset by the trial judge for formal sentencing.

When the defendant reappeared in court for sentencing, the trial judge, *sua sponte,* set aside the punishment that had been assessed and withdrew the defendant's plea of guilty. The defendant objected to such action and demanded that he be formally sentenced to serve the punishment that had been assessed. His objection was overruled. The cause was then transferred to another county criminal court at law for new trial. The defendant then filed a pretrial motion to dismiss based upon double jeopardy, which was overruled. The defendant was thereafter found guilty after a bench trial. His punishment was assessed by the trial judge at 180 days' confinement in the Harris County jail and a $500 fine. Adhering to what this Court had stated and held in *Zaragosa,* supra, the court of appeals held that the first trial judge was without authority to set aside the punishment that had been assessed and also did not have the authority to set aside the defendant's plea of guilty. It then held that such action rendered the second conviction void. However, the court of appeals did not grant the defendant a new trial because it concluded that specific performance, which it could order to be accomplished and which was all that the defendant in that cause apparently wanted, was the proper remedy. It then ordered that the original judgment of conviction and the punishment that had been assessed be reinstated.

For purposes of this opinion, we approve the reasoning that the Houston First Court of Appeals used in *Morris v. State,* supra.

Therefore, we will consider the matter as though on September 16th appellant had been found guilty, that Relator approved the plea bargain agreement, but had not then assessed Le's actual punishment.

## DID THE COURT OF APPEALS HAVE JURISDICTION TO ISSUE THE WRIT OF MANDAMUS?

As previously pointed out, Le applied to the court of appeals for a writ of mandamus to mandamus Relator to specifically enforce the plea bargain agreement that he had entered into with the prosecutor. The court of appeals granted the writ.

The court of appeals, in holding that "under Tex.Gov.Code § 22.221(b), the courts of appeals have mandamus jurisdiction virtually identical to that of the Supreme Court and the Court of Criminal Appeals [in criminal law matters]" was prescient as to what this Court would eventually hold when it decided the question whether the courts of appeals, in criminal cases, had authority to issue writs of mandamus. In *Dickens v. Second Court of Appeals,* 727 S.W.2d 542 (Tex.Cr.App.1987), a majority of this Court held that "courts of appeals, pursuant to § 22.221(b) [of the Government Code], have mandamus jurisdiction over criminal law matters concurrent with the mandamus jurisdiction of this Court." Thus, in light of *Dickens,* supra, if all necessary prerequisites have been satisfied, see *post,* the Austin Court of Appeals had the authority to issue the writ of mandamus against Relator.

It is now axiomatic that before the writ of mandamus may issue by an appellate court two prerequisities to the issuance of the writ of mandamus must first be met: (1) the act that the relator seeks to compel is ministerial, rather than discretionary, and (2) no other adequate remedy at law is available.

In making the first determination, whether the act that Le sought to compel, the specific enforcement of the plea bargain agreement that he had made, which was originally approved by Relator, we find that it is necessary for us to briefly discuss the subject of plea bargaining.

## THE SUBJECT OF PLEA BARGAINING AND AS APPLIED TO THIS CASE

We find that it is sufficient for our purposes to point out that "plea bargaining" is usually defined as follows: "Plea bargaining is a process which implies a preconviction bargain between the State and the accused whereby the accused agrees to plead guilty or nolo contendere in exchange for a reduction in the charge, a promise of sentencing leniency, a promise of a recommendation from the prosecutor to the trial judge as to punishment, or some other concession by the prosecutor that he will not seek to have the trial judge invoke his full, maximum implementation of the conviction and sentencing authority he has," i.e., it is the process where a defendant who is accused of a particular criminal offense, and his attorney, if he has one, and the prosecutor enter into an agreement which provides that the trial on that particular charge not occur or that it will be disposed of pursuant to the agreement between the parties, subject to the approval of the trial judge. Put another way, "plea bargaining is the process by which the defendant in a criminal case relinquishes his right to go to trial in exchange for a reduction in charge and/or sentence." See Heuman, *Plea Bargaining* (1978 edition). Also see Blumberg, *Criminal Justice* (1967 edition); *United States Department of Justice Pamphlet,* entitled "Plea Bargaining: Critical Issues and Common Practices," (July, 1985); *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); Bond, *Plea Bargaining and Guilty Pleas* (1982 edition); 3 *Texas Criminal Practice Guide,* Section 70.02[2]; and Jacks, "Suggested Guidelines for Plea Bargaining", 41 *Tex.B.J.* 363 (1978). It is estimated that up to 90% of felony convictions in the state courts are the result of negotiated pleas. The use of "plea bargain agreements" to dispose of criminal cases is today as rampant in Merry Old England as it is in this State. See McDonald and Cramer, *Plea-Bargaining* (1980 edition). A defendant in Texas, however, does not have either a constitutional or statutory right to plea bargain with a prosecutor for a particular punishment or for a reduced charge. See *Morano v. State,* 572 S.W.2d 550, 550–551 (Tex.Cr. App.1978). Trial judges in the federal system are expressly prohibited from participating in pre-plea discussions, including any discussion or indication of a possible sentence for a plea of guilty. See *Federal Rules of Criminal Procedure,* Rule 11, section (e)(1). Although Texas trial judges are not expressly prohibited by statute or any rule of law from participating in a plea bargaining session, this Court has nevertheless suggested that a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant. See *Ex parte Williams,* 704 S.W.2d 773, 777, fn. 6 (Tex.Cr.App. 1986). The reason for this suggestion is that the trial judge should always avoid the appearance of any judicial coercion or prejudgment of the defendant since such influence might affect the voluntariness of the defendant's plea. Also see, for example, *State ex rel. Bryan v. McDonald,* 662 S.W.2d 5, 9 (Tex.Cr.App.1983); *Ex parte Shuflin,* 528 S.W.2d 610, 615–617 (Tex. Cr.App.1975); and *Kincaid v. State,* 500 S.W.2d 487, 490–491 (Tex.Cr.App.1973).

In the mandamus action that Le brought against Relator in the court of appeals, that court held that when Relator approved the plea bargain agreement, as to a "cap" on the punishment that would ultimately be assessed, Relator was then legally bound to carry out the terms of the agreement, subject to assessing something less than the agreed upon "cap" on punishment. The court of appeals cited and relied upon this Court's decision of *Ex parte Williams,* 637 S.W.2d 943 (Tex.Cr.App.1982), as authority, which we agree is on point.

In *Ex parte Williams,* supra, this Court discussed and summarized the case law

with respect to the subject of plea bargaining in the criminal justice system of this State. We will not repeat here what was stated therein except the following:

"When a defendant agrees to the terms of a plea bargain agreement he is deemed to have entered into the agreement knowingly and voluntarily unless he shows otherwise ... Once the court [announces that it will be bound by the plea bargain agreement], the State is bound to carry out its side of the bargain ... Likewise, the defendant is bound to carry out his side of the bargain ..." (947).

Although a defendant in Texas has no constitutional or statutory right to engage in plea bargaining with a prosecutor, plea bargaining itself is statutorily recognized in Texas. Art. 26.13(a)(2), V.A.C.C.P., expressly provides:

(a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of: (2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere ...

In this instance, the record is clear that Le, with his attorney, entered into a plea bargain agreement with the prosecutor, wherein Le agreed to plead guilty in exchange for a recommendation from the prosecutor as to the maximum possible punishment that would be assessed, not more than 25 years, with the possibility that if the agreed to presentence investigation report turned out favorable to Le, Relator might possibly assess punishment at less than the agreed upon "cap". The plea bargain agreement was in all things approved by Relator. We agree with the court of appeals' holding that once Relator accepted Le's plea of guilty and approved the plea bargain agreement, under our law, he clearly was without any authority or power to do other than specifically enforce the agreement, except that he could have assessed a lesser punishment than the agreed upon maximum "cap" on the punishment that would ultimately be assessed.

■ As previously pointed out, under our law, when a defendant enters a plea of guilty or nolo contendere pursuant to a plea bargain agreement with the prosecutor, and the plea is accepted and the agreement is approved by the trial judge, the defendant is entitled to specific enforcement if the agreement can be enforced, or, if not enforceable, is entitled to withdraw his plea. See, for example, *Ex parte Williams*, supra. Also see *Ex parte Huerta*, 692 S.W.2d 681 (Tex.Cr.App.1985); *Ex parte Chandler*, 684 S.W.2d 700 (Tex.Cr. App.1985); *Ex parte Young*, 684 S.W.2d 704 (Tex.Cr.App.1985); *Ex parte Burton*, 623 S.W.2d 418, 419 (Tex.Cr.App.1981); *De Russe v. State*, 579 S.W.2d 224 (Tex.Cr. App.1979); *Bass v. State*, 576 S.W.2d 400 (Tex.Cr.App.1979); and *Joiner v. State*, 578 S.W.2d 739 (Tex.Cr.App.1979).

■ In this instance, the record does not reflect that Le has ever complained that his plea of guilty was not knowingly, intelligently and willingly entered, nor does the record reflect that he has ever expressed any dissatisfaction with the plea bargain agreement that he and his attorney entered into with the prosecutor. In fact, the record clearly reflects that Le, through his attorney, vehemently protested Relator's act of voiding the plea bargain agreement and withdrawing his plea of guilty as well. All Le has ever wanted since September 16th is that if Relator would not assess less than 25 years' confinement in the Department of Corrections, he would be satisfied with the 25 year punishment. The court of appeals implicitly found that there is no known impediment to specifically enforcing the agreement. We have carefully searched the record to find such an impediment but our search has been fruitless. As noted, when the defendant enters into a plea bargain agreement with the prosecu-

tor, and the trial judge approves the agreement, and the agreement is not kept, the proper relief is either specific performance of the agreement, if it can be enforced, or withdrawal of the plea if it cannot. In this instance, we find as did the court of appeals that the plea bargain agreement is enforceable.

We pause to point out that there is no evidence in the record before us of any fraud in the inducement on the part of Le or his attorney that might estop Le from seeking specific performance of the agreement he made with the prosecuting attorney. Had the record so reflected, then, of course, that might cause us to view the matter in a different light. However, as the court of appeals pointed out in its mandamus opinion that relates to this cause, "... the prosecutor made no effort to demonstrate for the record the truth of [the witness's hearsay statement that she had obtained after Le had entered his plea of guilty], and respondent [Judge Perkins] acknowledged ... that he did not know whether the statement was true."

Of course, it is not our function to decide whether Le committed aggravated perjury when he testified before Relator. That is a matter for a Grand Jury of Travis County to investigate should it desire to look into the matter.

RELATOR DID NOT HAVE THE DIS-
    CRETION TO SET ASIDE LE'S PLEA
    OF GUILTY AND THE PLEA BAR-
    GAIN AGREEMENT

■ We agree with the court of appeals that "A trial court may be directed by mandamus to enter a particular judgment if it is the only proper judgment that can be rendered in the circumstances ..." The court of appeals implicitly, if not expressly, held that the act that Le sought the court of appeals to compel Relator to do was a ministerial, rather than a discretionary act.

■ In *Smith et al., v. Flack et al.*, 728 S.W.2d 784 (Tex.Cr.App.1987), this Court, relying upon its decision of *Curry v. Gray*, 726 S.W.2d 125 (Tex.Cr.App.1987), held that "An act is 'ministerial' if it constitutes a duty clearly fixed and required by law,"

and can be "accomplished without the exercise of discretion or judgment." This Court also held that an act is ministerial when the law clearly spells out the duty to be performed with such certainty that nothing is left to the exercise of discretion or judgment. *Tex. Board of Pardons and Paroles v. Miller*, 590 S.W.2d 142 (Tex.Cr. App.1979). In sum, if the law clearly spells out the duty to be performed with such certainty that nothing is left to the exercise of discretion or judgment, then it is not a discretionary act, but is a ministerial act. *Tex.Dept. of Corrections v. Dalehite*, 623 S.W.2d 420 (Tex.Cr.App.1981).

The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. See *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). It issues in order to direct an individual, agency, inferior tribunal, board, corporation, etc., to perform a purely ministerial or mandatory duty imposed by law. Some examples of when it should issue is to compel performance of *ministerial* or *mandatory* duties imposed by law on public officers and tribunals when there is no other adequate remedy available. See, for example, *Tex. Board of Pardons and Paroles*, supra. However, it is not to be used to force a particular result, or to change a result, the determination of which involves an exercise of judicial or discretionary authority. *State ex rel. Wade v. Mayes*, 689 S.W.2d 893 (Tex.Cr.App.1985).

However, in *Dickens v. Second Court of Appeals*, supra, this Court engrafted the "clear abuse of discretion" standard onto the former two part exclusive test. In this instance, because of this Court's decision of *Jacolos v. State*, 692 S.W.2d 724 (Tex.Cr. App.1985), Relator has no adequate remedy at law available to him to challenge the writ of mandamus that the court of appeals issued. He has thus satisfied one part of the test. We must now decide whether in ordering the writ of mandamus to issue against Relator, the court of appeals "clearly abused its descretion." We find that it did not.

■ Given what this Court has stated and held regarding specific enforcement of a valid plea bargain agreement, we find that those decisions placed a ministerial, mandatory, and non-discretionary duty on Relator to specifically enforce the plea bargain agreement that was made by the parties and approved by him in Le's case. Under the law, Relator had no discretion about the matter; he was charged as a matter of law with enforcing the plea bargain agreement that he himself approved, subject to him assessing a lesser punishment.

Therefore, given the law that governs the plea bargain agreement that was entered into and approved by Relator, in no realistic sense can it be said that the court of appeals so grossly abused its judicial or discretionary function as to have refused the performance of that function at all. On the contrary, we find that the court of appeals' decision to be carefully analyzed and judiciously considered, in accordance with the highest standards of the appellate judiciary of this State.

Under *Dickens v. Second Court of Appeals,* supra, we look to the Supreme Court of Texas for guidance in this area of the law, in order to make the determination whether the court of appeals clearly abused its discretion in issuing the writ of mandamus.

In *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916 (Tex.1985), the Supreme Court of Texas stated that "the court of appeals may issue writs of mandamus 'agreeable to the principles of law regulating those writs' ... Mandamus issues [from the court of appeals to the trial court] only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law ... The court of appeals, therefore, acts in excess of its writ power (abuses its discretion) when it grants mandamus relief absent these circumstances." (917). Conversely, if the court of appeals properly grants mandamus relief, and issues the writ of mandamus, it has not acted in excess of its writ power when it grants relief.

Finding that the court of appeals did not clearly abuse its discretion in the premises, we deny Relator's application for the writ of mandamus.

McCORMICK, J., concurs in the result only.

ONION, P.J., dissents.

CLINTON and DUNCAN, JJ., dissent for the reasons expressed in the dissenting opinion filed in *Dickens v. Ct. of App., 2nd Sup. Jud. Dist.,* supra.