**Cirildo OTERO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–88–125–CR.**

Court of Appeals of Texas,
Corpus Christi.

March 23, 1989.

Jesus L. Santos, Sinton, for appellant.

Thomas L. Bridges, Sinton, for appellee.

Before NYE, C.J., and DORSEY and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

Appellant complains that the trial court erred in refusing to follow the State's punishment recommendation in accordance with a plea bargain agreement. The issue is whether the trial court must follow such a recommendation, or allow the plea to be withdrawn. We hold it must and reverse.

Appellant pleaded guilty to murder on April 1, 1987. The trial court asked appellant if he was pleading guilty because he was guilty and not for any other reason. Appellant said that was correct and that no one made any promises to make him plead guilty. He also said that he was not coerced, threatened, or forced to plead guilty. The court correctly informed appellant of the punishment range, that the court was not bound by any punishment recommendation made by the State, that the court could assess the maximum punishment, and that if the court did accept a recommendation, appellant might not be able to appeal the case without permission.[1]

---

1. No issues are raised concerning this Court's jurisdiction or the appealability of the conviction. *See Galitz v. State,* 617 S.W.2d 949 (Tex. Crim.App.1981); *Padgett v. State,* 764 S.W.2d 239 (Tex.Crim.App., 1989); *see also Decker v. State,* 570 S.W.2d 948 (Tex.Crim.App.1978).

After finding appellant mentally competent to stand trial, the court asked the prosecutor if he had a recommendation for punishment. The prosecutor stated that appellant had requested a presentence investigation. The following then transpired:

MR. TATE [Appellant's counsel]: *The agreement we have* [2] basically is the State has recommended a number of years which the State will not exceed, and reserve the right to reduce that after receiving the PSI, and any other evidence we would provide after that.

\* \* \* \* \* \*

THE COURT: ... so the court will assess punishment after getting a PSI; is that correct?

MR. DIAZ [Appellant's second counsel]: That is correct.

MR. TATE: That is basically correct.

THE COURT: Basically, not all together?

MR. TATE: What I am saying, Your Honor, is the State has agreed to waive a recommendation pending receipt of the PSI. That recommendation is static. After we receive the PSI, that recommendation could be changed to be lowered. *That is basically our agreement, the maximum recommendation is forty.*

THE COURT: You are recommending forty years?

MR. WELBORN [State's Counsel]: *That would be our recommendation* to the Court if—

THE COURT: Upon receipt of the PSI, then we could assess any punishment.

MR. TATE: Yes, ma'am.

MR. WELBORN: *There was one other understanding.* We are not seeking a fine in this particular case, Your Honor, based upon the length of confinement, and also it's my understanding, at least, I assume Mr. Tate understands, unless something shows up in the PSI that we are unaware of indicating an extreme violent nature of this individual and a greater need for protection of society than we have knowledge of right now,

*we are not going to recommend more than forty,* and I would assume that will be the case. It's not an absolute guarantee that we are not going to recommend more than forty if something additional comes out that we are not aware of, then I think Mr. Tate is fairly well-aware of all the circumstances we have. It's anticipated our recommendation will go no more than forty years, though.

THE COURT: So it's not hard sentence, then.

MR. TATE: Not cash and time, Your Honor.

THE COURT: All right, *so the Court will accept that recommendation.*

The trial court then pronounced appellant guilty and ordered the probation department to prepare a presentence report.

Appellant and both of his attorneys signed a written "plea of guilty" which read, in part:

3. I fully understand that the Court is not bound to follow recommendations, if any, concerning punishment herein. I expect the Court to inquire as to the existence of any plea bargaining agreements between me and the State through our respective attorneys; to inform me whether it will follow or reject such agreement in open court before any findings on my plea; and, should the agreement be rejected, I shall be permitted to withdraw my plea.

The trial court's docket sheet of the hearing reads in part:

... Court advised defendant of the consequences of his plea of guilty and the range of punishment attached to the offense charged. Defendant admonished that the recommendation of the prosecuting attorney as to punishment is not binding on the Court. Inquiry made as to any plea bargaining agreement between State and defendant and that *Court would follow such agreement.* Defendant appeared mentally competent and plea free and voluntary. Plea accepted.

**2.** All emphasis throughout this opinion is supplied by the author unless otherwise noted.

At the hearing on sentencing, the following occurred:

> THE COURT: Does the State have a recommendation as far as punishment in this case?
>
> MR. WELBORN: Yes, Your Honor. The initial hearing in this cause, Your Honor, *the State represented to counsel that the State would make a recommendation at that time of forty years confinement* in the Texas Department of Corrections, and if any recommendation —if any recommendation needed to be changed after the pre-sentence report, this office would consider doing that, Your Honor.
>
> We have reviewed the documents in the pre-sentence investigation, *we wish to reurge that recommendation to the Court at this time....*

Appellant's attorney then pled for leniency and requested the court to assess punishment at five years' imprisonment. The trial court sentenced appellant to 60 years in TDC, after reviewing the presentence investigation and the history of the appellant.

Appellant then moved to withdraw his plea of guilty because the trial court had not abided by the plea bargain agreement. The court responded, "I don't know any plea bargain agreement was made *except the punishment—*"

The prosecutor, who had just moments before, as set out above, said that the 40–year recommendation had been made at the initial hearing, now said that no recommendation had been made and then contradicted himself by saying that the parties had an agreement that the State would not recommend more than forty years. Appellant's counsel stated that there had been a plea bargain agreement and that appellant's plea was induced by the agreement. The court denied appellant's motion to withdraw his plea, saying, "We have a record."

▇ Appellant contends by his first point of error that the trial court did not follow the plea bargain and erred by not allowing appellant to withdraw his plea. The State argues that the agreement be-

tween appellant and the State was that the trial court would assess punishment, and that the State anticipated a recommendation of forty years. The State asserts that it never deviated from the agreement to recommend forty years but that there was no agreement that the sentence would not exceed forty years. The State is correct in pointing out that its recommendation complied with the agreement and that "every agreement or promise made by the prosecution was fulfilled." However, the State's compliance does not necessarily absolve any error the trial court may have made in accepting the plea recommendation and then not following it.

Prior to the 1977 amendment of article 23.16 of the Texas Code of Criminal Procedure, a trial judge was not in any way bound by a plea bargain, and regardless of any plea bargain he could assess punishment anywhere within the punishment range. *Galvan v. State*, 525 S.W.2d 24 (Tex.Crim.App.1975).

For instance, in *Gibson v. State*, 532 S.W.2d 69 (Tex.Crim.App.1975) and *Cruz v. State*, 530 S.W.2d 817 (Tex.Crim.App.1975), the defendants plead guilty pursuant to bargains that the State would recommend probation. In each case the trial court refused to follow the bargain. The convictions were upheld in each case. The rationale was that the pleas were not involuntary merely because the defendants failed to correctly assess the weight that the prosecutor's recommendation would carry with the trial court; that is, the defendant, by freely and voluntarily pleading guilty, legally took his chances on what the punishment might be and was bound by the unforeseen decision of the court.

Article 26.13 was amended by the Acts 1977, 56th Leg., p. 748, ch. 280, Sec. 1, eff. Aug. 29, 1977, so that the trial judge who is not going to follow a plea bargain, as is clearly his discretion, must inform the defendant of this fact and allow him to withdraw his plea. *See Washington v. McSpadden*, 676 S.W.2d 420, 423 (Tex. Crim.App.1984).

Here, the record unambiguously shows that the parties had some agreement prior to the entry of the plea. The State agreed to recommend a maximum punishment of 40 years, conditioned that the results of a pre-sentence investigation did not reveal matters then unknown to the State. The investigation was completed and the State, apparently satisfied that no new matters had been disclosed, adhered to its initial recommendation, as it was bound to do under the terms of the previously articulated agreement.[3]

At the initial hearing, the trial court stated that it accepted the State's recommendation. Although the State's recommendation was contingent upon the results of the pre-sentence investigation, the trial court agreed to be bound by that recommendation. Having accepted the State's recommendation, the trial court had a ministerial, mandatory, and nondiscretionary duty to specifically enforce the plea agreement that was made by the parties and approved by her. *Perkins v. Court of Appeals for the Third Supreme Judicial District of Texas*, 738 S.W.2d 276 (Tex.Crim.App. 1987).[4]

*Huffman v. State*, 676 S.W.2d 677 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd), is somewhat similar to the present case. In *Huffman*, the defendant pled guilty, telling the court that there was no plea bargain, but that the State would not recommend punishment of more than thirty years. Following a pre-sentence investigation, the prosecutor recommended thirty years, pointing out to the trial court that the appellant had been helpful in testifying against his accomplice. The trial court refused to follow the State's recommendation and assessed punishment at 90 years. Although there had in fact been some agreement between the State and the defendant prior to the entry of the plea, the Houston Court found no basis to reverse defendant's conviction on the trial court's refusal to allow the defendant to withdraw his plea, where the trial court had not been aware of this plea bargain. The present case is distinguishable from *Huffman* because here the trial court was aware of the negotiations between the State and appellant, and the trial court accepted the State's punishment recommendation.

Although not directly raised by appellant in his brief is the issue of whether the trial court complied with article 26.13(a)(2), which requires the trial court to "inquire as to the existence of any plea bargaining agreements between the state and the defendant." While the trial court certainly participated in discussions with the parties concerning the State's punishment recommendations, it never explicitly asked the parties if these recommendations were the result of a plea bargaining agreement. The parties' responses show that they had some agreement, and perhaps this is why the trial court failed to explicitly ask the required question. An explicit inquiry could prevent confusion in these types of cases. *See Kass v. State*, 642 S.W.2d 463

---

3. It appears that the trial court may have been misled by appellant's own counsel's ambiguity concerning the terms of the plea agreement. The trial court asked if it "could assess any punishment" and was informed it could. The court also asked whether the punishment was "hard sentence" and was informed it was not.

As we understand the agreement between the State and appellant, the agreement was not that appellant would receive a determined number of years, but for a maximum cap on the punishment, and the maximum cap could be ignored depending on the outcome of the pre-sentence investigation. In this sense, the parties were not suggesting a set number of years, but leaving the decision to the trial court to assess any punishment consistent with the limitations of their agreement. Although we understand how the trial court could have been misled by the terms of this agreement, and strongly recommend that plea agreements be more solidified than the one in this case, the trial court has a statutory obligation to inquire into the existence of an agreement and comprehend the terms of any agreement before accepting the plea. Had the trial court persisted in this case, the terms of the bargain may have been clearer. When read in terms of the agreement as we understand it, appellant's counsel's remarks are consistent with the bargain but not elucidating of it.

4. The plea bargain in *Perkins* is akin to the one in this case, except that the State in *Perkins* did not have the option of increasing its recommendation following the preparation of the pre-sentence investigation. *See Perkins*, 738 S.W.2d 276; *Thi Van Le v. Perkins, Judge*, 700 S.W.2d 768 (Tex.App.—Austin 1985, orig. proceeding).

(Tex.Crim.App.1981) (punishment recommendation followed, but nothing in record to show that recommendation was result of plea bargain); *McGuire v. State,* 617 S.W.2d 259 (Tex.Crim.App.1981).

Because we find merit in appellant's point of error one we need not address point of error two. We do note, however, that in point of error two appellant contends that no plea bargain existed. Given the state of the proceedings, we understand appellate counsel's presentation of an alternate theory of error, and do not consider this as an admission that no plea bargain occurred or was accepted by the trial court.

Appellant prays that this Court either reform, remand or reverse the trial court's judgment. Having determined that the trial court accepted the State's recommendation on punishment, we believe the proper disposition is to remand the cause to the trial court with instructions that it specifically enforce the plea agreement, and assess punishment at no greater than 40 years in the Texas Department of Corrections.

Although appellant has not explicitly requested specific enforcement of the plea agreement, this Court has authority to dispose of the cause in this manner. *See Carter v. State,* 656 S.W.2d 468 (Tex.Crim. App.1983); *Perkins,* 738 S.W.2d at 276; Tex.R.App.P. 87(b).