# NO. 12-20-00075-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KEVIN WADE COOPER,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Kevin Wade Cooper appeals his conviction for aggravated assault with a deadly weapon. In two issues, Appellant challenges the validity of the trial court's judgment and the constitutionality of his court costs. We vacate the judgment, reinstate the trial court's prior order placing Appellant on deferred adjudication community supervision, and remand the case to the trial court.

## BACKGROUND

Appellant was indicted for the offense of aggravated assault with a deadly weapon, namely a motor vehicle. On December 2, 2019, the trial court admonished Appellant and he entered a plea of "guilty" to the offense and "true" to the deadly weapon allegation pursuant to a negotiated plea agreement. Per the agreement, the trial court deferred a finding of guilt, ordered the preparation of a presentence investigation report (PSI), and set a date for sentencing.

At the sentencing hearing on January 13, 2020, Appellant stated that he last used amphetamine or methamphetamine "back in 2018." However, the trial court's records showed that Appellant "tested positive for meth use on [December 10, 2019]." Appellant denied the accuracy of that report and stated once again under oath that he had not used methamphetamine

since 2018.  Based on Appellant's denial and the PSI, the trial court accepted the plea agreement and signed an order placing him on deferred adjudication community supervision for three years.

The following day, Appellant reported to the probation department and submitted to urinalysis testing, which revealed the presence of methamphetamine.  When confronted with the test results, Appellant advised that he last consumed methamphetamine on January 10, 2020, which was after he pleaded guilty and three days before his sentencing hearing where he indicated he last consumed the drug in 2018.  The probation department immediately filed a violation report in the trial court describing this information.  Consequently, that same day the trial court signed a sua sponte "Order Granting New Trial," which stated that Appellant's guilty plea was withdrawn and a new trial ordered where Appellant "was possibly under the influence of methamphetamines on the date he was sentenced" and he "committed Aggravated Perjury by denying any recent drug use during the discussion and PSI review at his sentencing on January 13, 2020."

On January 27, the parties appeared in court, and after detailing Appellant's misrepresentation on the record concerning his drug use, the trial court set aside the order placing him on deferred adjudication community supervision.  At this hearing, Appellant was admonished and made an open plea of "guilty" to the underlying offense and "true" to the deadly weapon allegation, and the trial court set the matter for sentencing.  On February 18, after reaffirming his open plea of guilty, the trial court accepted the plea and sentenced Appellant to eight years of imprisonment and assessed restitution in the amount of $2,449.64.  This appeal followed.

### VOID JUDGMENT

In Appellant's first issue, he argues that the trial court's judgment sentencing him to eight years of imprisonment is void because the trial court lacked authority to sua sponte grant a new trial.

**Standard of Review and Applicable Law**

The standard of review when a trial court grants a new trial is abuse of discretion.  *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014).  The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, "whether the trial court acted without reference to any guiding rules or

principles." *Id.* The procedural provisions governing motions for new trial in a criminal case require strict compliance. *Oldham v. State*, 977 S.W.2d 354, 361 (Tex. Crim. App. 1998).

"New trial means the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt." TEX. R. APP. P. 21.1(a). A motion for new trial in a criminal case may be granted only on the timely motion of the defendant, and the trial court has no authority to grant a new trial on its own motion. *Zaragosa v. State*, 588 S.W.2d 322, 326-27 (Tex. Crim. App. [Panel Op.] 1979).

Separately, a "verdict of guilt" under Rule 21 is a jury's assessment of guilt in a jury trial, while a "finding of guilt" is a judge's assessment of guilt in a bench trial. *Donovan v. State*, 68 S.W.3d 633, 635 (Tex. Crim. App. 2002). When adjudication is deferred, there is no "finding or verdict of guilt." *Id.* at 636. "Because there is no finding or verdict of guilt, there is nothing that can be set aside so as to create an occasion for implementation of Rule 21." *Id.*

Therefore, a trial court's sua sponte grant of a new trial in adjudicating guilt and revoking deferred adjudication community supervision is improper. *See Donovan*, 68 S.W.3d at 635-36; *Zaragosa*, 588 S.W.2d at 326-27. A trial court's grant of its own motion for new trial is a void act or nullity. *Perkins v. Court of Appeals for Third Supreme Judicial District of Texas, at Austin*, 738 S.W.2d 276, 280-81 (Tex. Crim. App. 1987). Consequently, any resulting conviction after the trial court sua sponte grants a new trial is also a nullity. *See Zaragosa*, 588 S.W.2d at 327. This means that the case shall be returned to the trial court to proceed as if it had not granted the new trial on its own motion. *See id.*

## Discussion

Appellant argues that the trial court's lack of authority to sua sponte order a new trial renders his subsequent conviction and sentence nullities. Consequently, he argues that we should set aside the trial court's judgment adjudicating him guilty of the underlying offense and sentencing him to eight years of imprisonment, reinstate the original order of deferred adjudication, and order the trial court to proceed as if it had not granted the new trial. The State does not dispute that the trial court lacked authority to grant a new trial on its own motion, but it argues that we should overrule Appellant's issue.[1]

---

[1] In addition to the lack of a "finding of guilt" authorizing a new trial on its own motion, we note that because the trial court granted the new trial on the day after it accepted Appellant's plea and placed him on deferred adjudication, this is not a case where the trial court's action can properly be characterized as a sentence modification. *See State v. Aguilera*, 165 S.W.3d 695, 698 (Tex. Crim. App. 2005) (holding trial court retains

The State argues that Appellant is estopped from arguing that the judgment is void because he did not object or otherwise complain that the trial court's grant of a new trial was an unauthorized void judgment. A void judgment is a nullity and can be attacked at any time. *Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001) *abrogated on other grounds by Wright v. State*, 506 S.W.3d 478, 482 (Tex. Crim. App. 2016). In this case, because the trial court lacked authority to grant a new trial on its own motion, its purported grant of a new trial was a void act, and the subsequent judgment of conviction is a nullity. *See Perkins*, 738 S.W.2d at 280-81; *see also Zaragosa*, 588 S.W.2d at 326-27. Because the judgment of conviction is void, Appellant did not forfeit his complaint by failing to raise it in a direct appeal from the judgment. *See Nix*, 65 S.W.3d at 667-68.

Nonetheless, the State argues that Appellant accepted benefits from the judgment of conviction and is consequently estopped from now asserting his issue. Estoppel by judgment is a form of estoppel whereby a person who accepts the benefits of a judgment, decree, or judicial order is estopped from denying its validity or propriety and cannot reject its burdensome consequences. *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007); *Deen v. State*, 509 S.W.3d 345, 349 (Tex. Crim. App. 2017). Here, citing *Rhodes* and *Deen*, the State argues that Appellant is estopped from complaining about the trial court's grant of a new trial because he accepted the benefits of the subsequent judgment of conviction sentencing him to eight years of imprisonment. However, this case is distinguishable because, unlike the defendants in *Rhodes* and *Deen*, Appellant did not receive any benefit from the judgment of conviction.

In both *Rhodes* and *Deen*, the State used prior convictions to enhance the appellants' sentences, and the appellants argued on appeal that the prior convictions could not be used because they were void. *Rhodes*, 240 S.W.3d at 884; *Deen*, 509 S.W.2d at 346. In *Rhodes*, the appellant argued that his prior conviction was void because the sentence ran concurrently with other sentences although a statute required that it be cumulated with the sentences. *Rhodes*, 240 S.W.3d at 884. In *Deen*, the appellant argued that his prior conviction was void because the sentence of confinement was less than the statutory minimum. *Deen*, 509 S.W.2d at 346. In

plenary power to modify sentence if modification is made on same day as initial sentence and before court adjourns for the day). Moreover, the trial court's action cannot be converted to and justified as a motion to withdraw Appellant's guilty plea after being placed on deferred adjudication, because he never sought to withdraw his plea and proceed to trial. *See, e.g., State v. Ellis*, 976 S.W.2d 789, 791-92 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that although trial court lacked authority to grant new trial on day after it placed defendant on deferred adjudication, it was authorized to grant functional equivalent of new trial because defendant's motion was essentially a motion to withdraw his guilty plea).

both cases, the court of criminal appeals held that the appellants were estopped from attacking the validity of the prior convictions because they accepted the benefits of the illegally lenient sentences. *Rhodes*, 240 S.W.3d at 892; *Deen*, 509 S.W.2d at 351.

In this case, the State argues that Appellant received a benefit from the judgment of conviction as well, namely a more lenient sentence than he likely would have received from a jury. However, this is not the relevant comparison. Appellant entered into a plea agreement with the State for deferred adjudication community supervision, and the trial court approved it. The trial court subsequently illegally granted a new trial on its own motion, set aside the deferred adjudication order, found Appellant guilty, and sentenced him to a term of imprisonment. Unlike the illegally lenient sentencing in *Rhodes* and *Deen*, the court's illegal action here in no way benefitted Appellant. Thus, it cannot be said that Appellant accepted a benefit from the judgment of conviction, and he is not estopped from attacking its validity on appeal under a theory of estoppel by judgment. *See Rhodes*, 240 S.W.3d at 891; *Deen*, 509 S.W.2d at 3.

Next, the State argues that the trial court was within its discretion to set aside the deferred adjudication order because Appellant intentionally lied to the court about a matter it relied on in deciding to accept the plea agreement. The State cites no case upholding a trial court's setting aside of an already approved plea agreement under such circumstances, and we find none. However, we find some support for the theory that a court may properly act this way in some instances. In *Perkins*, a defendant in a murder case made a plea bargain agreement with the state that provided his punishment would not exceed twenty-five years in prison. *Perkins*, 738 S.W.2d at 278. At the plea hearing, the defendant told the trial court that he was guilty of murder under the law of parties but did not shoot or stab anyone. *Id.* Thereafter, the trial court approved the plea agreement. *Id.* at 279. However, prior to the defendant's sentencing, the prosecutor informed the trial court that she spoke with a surviving victim of the attack who stated the defendant directly participated in the stabbing. *Id.* at 279-80. Based on this new information, the trial court told the defendant it would not assess the agreed punishment of imprisonment for twenty-five years or less. *Id.* at 280. The defendant filed an application for writ of mandamus in the court of appeals. *Id.* The court of appeals issued the writ directing the trial judge to enforce the plea agreement. *Id.* The judge filed an application for writ of mandamus in the court of criminal appeals. *Id.* That court denied the judge's writ application,

holding that the judge had a "mandatory, and non-discretionary duty . . . to specifically enforce the plea bargain agreement that was made by the parties and approved by him." *Id.* at 285.

However, the court of criminal appeals "pause[d] to point out" the following:

> [T]here is no evidence in the record before us of any fraud in the inducement on the part of [the defendant] or his attorney that might estop [the defendant] from seeking specific performance of the agreement he made with the prosecuting attorney. Had the record so reflected, then, of course, that might cause us to view the matter in a different light. However, as the court of appeals pointed out in its mandamus opinion that relates to this cause, " . . . the prosecutor made no effort to demonstrate for the record the truth of [the witness's hearsay statement that she had obtained after the defendant had entered his plea of guilty], and [the trial judge] acknowledged . . . that he did not know whether the statement was true."

*Id.* at 284. This language suggests that a defendant who fraudulently induces a trial court to accept a plea bargain agreement may later be estopped from seeking specific performance of the agreement.

Nonetheless, we similarly conclude that the State fails to show fraudulent inducement in this case. *See id.* As in *Perkins*, the State made no effort in the trial court to demonstrate for the record the elements of fraudulent inducement. *See id.* Those elements include the following: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on, and (5) which caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Here, we cannot conclude that the record before us establishes that the trial court relied on the misrepresentation or that it caused injury.

At the initial sentencing hearing on January 13, Appellant told the trial court that he had not used methamphetamine since 2018. However, the trial court knew that Appellant had two pending possession of a controlled substance cases in a neighboring county and that Appellant tested positive for methamphetamine use on December 10, 2019, which was after his guilty plea and prior to the sentencing hearing. The following discussion occurred at the hearing, showing that the trial court suspected that Appellant might not have been truthful regarding his drug use, yet placed him on deferred adjudication community supervision:

> THE COURT: So part of the reason I talk about this is because I think a certain group of people think they're smarter than the system. And I can assure you that I haven't come across somebody that's smarter than the system more than once or twice. And, usually, they end up back here, and those days are just not very good for them.

So, again, based upon what I have before me -- I don't have any laboratory proof that would suggest this is inconsistent. But we've got someone, with two other drug charges in the other county, that you've told us that you dispute. I don't know what those facts are. But at least sequencing, it sure seems like maybe that [you're] telling me, under oath, that you haven't used drugs since 2018 may not be true. I don't know.

But what we usually do is we catch them, regardless of what this is, whether it's true or not. So you're looking at a second-degree felony charge. And whenever you come back on a revocation, for whatever reason, my file will have all these notes. And I'll have your sworn testimony that you haven't used drugs in two years or more.

If they catch you dirty -- if they catch you violating your probation in any way, and you come back on a revocation and they prove it, then you're looking at the upper end, I think. I mean, I always look and see what people have to prove to me.

But one of the things the Courts really don't like is when people lie to us. So, again, I wouldn't want you thinking that -- if all this is true, you have no exposure.

However, if you're shading what you've told me, then you probably do have some exposure. Because people that like drugs usually get caught with drugs down the road, and those days are just usually not very good for them.

So are you sure you want me to approve this probation for you? Because you've got a lot of downside if they catch you using drugs in the next three years.

THE DEFENDANT: They won't catch me using drugs. I'm not using drugs.

. . . .

THE COURT: All right. Mr. Cooper, if I approve this for you, do you promise to be successful?

THE DEFENDANT: Yes, sir.

THE COURT: Court will follow the agreement.

In other words, the trial court was apparently suspicious and aware of facts indicating that Appellant may not have been truthful when representing that he had not used drugs since 2018, yet decided to give him the opportunity to complete deferred adjudication community supervision. Accordingly, the State has not proven that the trial court detrimentally relied on Appellant's representations when it placed him on deferred adjudication community supervision. *See id.*

After the trial court granted the motion for new trial, it held a hearing on Appellant's desire to make an open plea of "guilty." At that hearing the trial court detailed its reasoning for granting the new trial, which is principally because Appellant lied to him concerning his drug use. Specifically, the trial court stated as follows:

[THE COURT:] But you did go to probation. And when you got over there, you tested dirty. And you admitted to them -- even though you'd told me here, under oath [the day] before, that you hadn't used drugs for at least two years, as your presentence shows.

So that brought about my entering an order setting aside your sentencing and granting a new trial.

. . . .

And I've -- well, I haven't done it yet, but I guess my order suggested that I thought it needed to be done -- and I'll just find that order. Because I'm going to urge the prosecutors to take your case to a Smith County grand jury for charges of aggravated perjury. Because I believe you committed perjury here in the court that day whenever you, apparently, lied to me, under oath, that you hadn't been using any drugs.

Yes, I did put it in my order that I believed you committed aggravated perjury. And we talked about that on that day you were here. It just amazes me that people stand here in open court and lie to me, under oath, and subject themselves to even greater risk.

So before we proceed, so you'll know everything, I'm urging the State of Texas to get a copy of the transcript from that sentencing hearing and take [Appellant's] case to grand jury for consideration by them of the return of an aggravated perjury indictment for his lying to the Court, apparently, that day.

. . . .

THE COURT: All right. Well, I do insist. I think that our system only works if people that show up in our courts tell the truth. And if we knowingly let them not tell the truth, I think that is a bad, bad precedent for our system to set up. So every case -- it's nothing particular to [Appellant] -- every case, where I've seen aggravated perjury that I believe has happened, usually, it's pretty clear because, usually, it's related to the drug issues. Usually, they're caught dirty. Usually, that's completely in opposition to what they've told me, under oath, in the courtroom.

And -- well, I do it every time. I don't know what the State always does with it. Because sometimes the people go on to prison on the charge that they've plead guilty to. This one, of course, didn't get handled that way.

All right. The reason I cover that . . . is to make sure [Appellant] knows that, at least from my perspective, I think he needs to be charged with another offense. I don't control that. The Smith County grand jury does. But, frankly, as I've just indicated, I can't imagine the prosecutors not taking it to grand jury, when a district judge tells them they should.

And I can't imagine a grand jury looking at the transcript of that hearing and the defendant's sworn testimony, along with the admissions he made to the pretrial -- or not pretrial, but probation office -- and the test results, of doing anything other than returning an indictment for aggravated perjury. But that's just me. I don't control that process. I can make the recommendation that I'm doing.[2]

Furthermore, at the second sentencing hearing, Appellant's counsel reminded the trial court that it could consider placing him on deferred adjudication a second time. In response, the trial court confirmed that Appellant's earlier lie would prevent it from granting a second term of deferred adjudication supervision:

---

[2] The court in **Perkins** noted, "Of course, it is not our function to decide whether [the appellant] committed aggravated perjury when he testified before [the trial court]. That is a matter for a [grand jury of the relevant county] to investigate should it desire to look into the matter." **Perkins v. Court of Appeals for Third Supreme Judicial District of Texas, at Austin**, 738 S.W.2d 276, 284 (Tex. Crim. App. 1987). This statement provides further indication affirming the default rule that the trial court may not grant a new trial on its own motion after learning that a defendant lied and was subsequently placed on deferred adjudication community supervision. This is because the remedy is to assert a separate criminal proceeding for perjury.

> THE COURT: Court can always consider deferred. Frankly, I always consider everything I can do. But the likelihood of me giving you a deferred, whenever you've lied to me here, is pretty small. I'm going to have to hear something else that I don't have from those prior hearings, at this point, to begin to change my thoughts on that. Because someone that bald-faced, as my dad used to say, lies to me, even when the Court's trying to make sure that you will get caught on that particular issue if you've lied, is just beyond my comprehension.
>
> That doesn't sound like a good probationer to me. So, again, I haven't made a final decision on what I'm going to do. Because I always consider things.

Therefore, the record does not show that the misrepresentation caused injury—that it caused the trial court to accept the plea bargain agreement when it otherwise would not have. *See id.* The trial court's statements at the second plea and sentencing hearings tend to show that the trial court's decision to set aside the plea agreement was related less to the fact that Appellant consumed methamphetamine than the fact that he failed to disclose that information. *See id.* Because the record does not show that the trial court would not have accepted the plea agreement had it known about Appellant's recent drug use, we cannot say that Appellant's misrepresentation of that fact, if any, caused injury. Because the State fails to show all the elements of fraudulent inducement, we conclude that Appellant is not estopped from seeking specific performance of the plea agreement under a theory of fraudulent inducement. *See id.*; *Perkins*, 738 S.W.2d at 284.

Finally, without supporting authority, the State contends that the sua sponte grant of a new trial was proper because the trial court could essentially retroactively determine that Appellant might have been under the influence of drugs at the time of his guilty plea, thereby invalidating his plea. We acknowledge that no plea of guilty shall be accepted by the court "unless it appears that the defendant is mentally competent and the plea is free and voluntary." *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West Supp. 2020). There is a presumption of regularity with respect to guilty pleas. *See Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986). The State cites no authority permitting the trial court to grant a new trial on its own motion after it finds the plea was freely and voluntarily made, accepts the plea, and places the defendant on deferred adjudication community supervision in accordance with the parties' negotiated plea agreement. Rather, our law is well established that unless issue is made of an accused's competency *at the time of the plea*, the court need not make inquiry into his competency, particularly where the court has had opportunity to observe the accused in open court, hear him speak, and observe his demeanor. *See Kuyava v. State*, 538 S.W.2d 627 (Tex. Crim. App. 1976).

Here, there is no evidence in the record showing that Appellant used narcotics or appeared to be under the influence of any drugs when he pleaded guilty on December 2, 2019. Moreover, at Appellant's subsequent sentencing hearing on January 13, 2020, there was no indication in the record that he appeared to be under the influence of any drugs at that time even though he later admitted to using methamphetamine three days prior to the hearing. In fact, the trial court, after interacting with Appellant in open court, hearing him speak, and observing his demeanor, found that he knowingly, freely, and voluntarily made his guilty plea. The State has failed to show that the trial court could properly sua sponte grant a new trial in response to its subsequent suspicion that Appellant may have been under the influence of drugs at his sentencing hearing. Furthermore, there has been no evidence adduced showing that Appellant was actually under the influence of methamphetamine at the time of his sentencing hearing. *See Laue v. State*, 491 S.W.2d 403, 404 (Tex. Crim. App. 1973) (holding record showing that defendant was duly admonished before his guilty plea was accepted and that counsel stated defendant was of sound mind and capable of assisting counsel in preparation of case did not bear out contention that guilty plea was involuntary because he was undergoing narcotics addiction treatment at the time); *Wright v. State*, No. 08-03-00170-CR, 2004 WL 362775, at *2 (Tex. App.—El Paso Feb. 26, 2004, no pet.) (mem. op., not designated for publication) (applying *Kuyava* to contention that defendant's plea was involuntary because he was either under influence or had withdrawal symptoms from narcotics at time of plea, and even though court had no duty to inquire into competency, it did so and concluded that evidence supported finding that plea was freely and voluntarily made).

In summary, the trial court's judgment finding Appellant guilty and sentencing him to eight years of imprisonment is void based on the trial court's lack of authority to grant a new trial on its own motion, especially since it was granted from an order placing him on deferred adjudication community supervision, and the State fails to show that Appellant is estopped from seeking specific performance of the plea bargain agreement under theories of estoppel by judgment and fraudulent inducement. *See Carroll v. State*, No. 12-20-00051-CR, 2020 WL 7042602, at *2–5 (Tex. App.—Tyler Nov. 30, 2020, no pet.) (mem. op., not designated for publication) (applying these rules in similar case). Finally, the State failed to show that the trial court is permitted to grant a new trial on its own motion to invalidate Appellant's guilty plea and failed to bring forth sufficient evidence to invalidate the plea under this record. Accordingly, we

sustain Appellant's first issue.  Because we conclude that the judgment is void, and estoppel does not apply, we need not address Appellant's issue regarding court costs.  *See* TEX. R. APP. P. 47.1.


## DISPOSITION

Having sustained Appellant's first issue, we ***vacate*** the trial court's judgment of conviction, ***reinstate*** the order placing him on deferred adjudication community supervision, and ***remand*** the case to the trial court to proceed as if it had not granted a new trial.


**BRIAN HOYLE**
Justice


Opinion delivered January 29, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(DO NOT PUBLISH)


11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 29, 2021**

**NO. 12-20-00075-CR**

**KEVIN WADE COOPER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0194-19)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **vacated** and the order of deferred adjudication be **reinstated** and the cause **remanded** with instructions to proceed as if it had not granted a new trial; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*